## THE STATE *VS.* HAWKINS.

1. In larceny, the criminal intention constitutes the offence, and is the only criterion by which to distinguish a larceny from a trespass.

2. To constitute larceny, it is not sufficient that the goods be taken for the purpose of destroying them ; as, if one take the horse of another, for the purpose of destroying him, to injure his neighbor—and should destroy him—this would be malicious mischief, but not larceny.

3. Where a defendant assisted in secreting a slave, to the end that she might escape from her master, and obtain her freedom, but there was no intention to convert the property to the use of the defendant—an indictment for larceny could not be sustained.

Error to Mobile Circuit court.

Indictment for stealing a slave, tried by Judge *Pickens.*

This was an indictment found against the prisoner, in the Circuit court of Mobile county, for stealing a slave.

There was a verdict against the prisoner, on the plea of not guilty, and judgment pronounced against him.

On the trial of the cause, a bill of exceptions was taken, which was as follows : " Be it remembered, that on the trial of this cause, it was proven on behalf of the State, that the defendant had taken the negro slave, Jane, out of the possession of her master, and had attempted to place her on board a certain vessel called the brig Martha, then just about sailing for a northern port, with a view of enabling said slave Jane to secure her freedom, by going to a free, or non-slaveholding State.

It was further proven in behalf of the State, that ha-

ving failed to find the said brig Martha, (which had
dropped down the river,) on account of the darkness of
the night, and the density of the fog,—the defendant
concealed in the forecastle of the schooner Eclipse, (on
which he was cook,) the said slave Jane, for several days,
for the purpose of enabling her to make her escape to a
free, or non-slaveholding state.

The judge charged the jury, that if the evidence satis-
fied them that the taking and carrying away, was with
the motive of taking the slave to a free State, that she
might enjoy freedom, such motive was sufficient to con-
stitute larceny.

The question of law arising out of the evidence, and
the charge of the court, was by the judge referred to this
court, as novel and difficult.

*Attorney General*, for the State.

ORMOND, J.—The judgment, in this case, is founded
on a statute of this State, to be found in Aiken's Digest,
103, sec. 19. "If any person or persons, shall steal any
negro or mulatto slave whatsoever, out of, or from the
possession of the owner or overseer of such slave, the
person or persons so offending, are hereby declared to be
felons, and shall suffer death."

The single question presented by the record, is, whe-
ther the facts given in evidence on the trial in the court
below, and from which, under the instruction of the
court, the jury found the prisoner guilty, were sufficient
to warrant his conviction on this indictment, for *stealing*
the slave therein mentioned.

The State vs. Hawkins.

The evidence establishes the fact beyond all doubt, that the prisoner did not intend to convert the negro to his own use, but that the taking was to enable her to make her escape to a free State; upon which the court charged the jury, that if the motive of the prisoner, in taking the slave, was to enable her to escape to a free State, that she might enjoy freedom, such motive was sufficient to constitute larceny.

We will proceed to examine whether a larceny can be committed without the *animus furandi;* the intention to convert the subject of the larceny to the use of the taker.

Blackstone defines larceny to be the "*felonious* taking and carrying away the goods of another"—(4th Book, 230.) This taking and carrying away, he says, must also be *felonious,* that is, done *animus furandi;* or, as the civil law expresses it, *lucri causa.* It is also thus defined by Lord Coke, in his Institutes, and by Hawkins, in his Pleas of the Crown—(1 Hawk. 93.)

This definition has been objected to, as not being sufficiently certain,—the word *felonious* itself, requiring a definition; and Archbold submits the following: "Larceny, as far as respects the intent with which it is committed, (and the intent here, is a material part of the offence,) may perhaps be correctly defined thus: where a man knowingly takes and carries away the goods of another, without any claim or pretence of right, with intent wholly to deprive the owner of them, and to appropriate or convert them to his own use." And Chief Justice Eyre, in Pears' case, defined the offence thus: "The wrongful taking of goods, with intent to spoil the owner of them, *lucri causa.*"

It is apparent from the definition, and is so expressly laid down in the books, that the criminal *intention* constitutes the offence, and is the only criterion by which to distinguish a larceny from a trespass. According to this definition, to constitute the offence, it is not sufficient that the goods be taken for the purpose of destruction, as, if one should take the horse of another, for the purpose of destroying him, to injure his neighbor, and should destroy him, such an offence would be punishable as malicious mischief, but it would want one of the essential ingredients of larceny, the *lucri causa,*—the intention to profit by the act—by the conversion of the property.

This is the ancient doctrine of the common law, but it has been recently called in question by several decisions made by the English Judges, which will be now noticed, as it was probably under their influence that the decision of the court below was made.

In the case of the King vs. Cabbage, (Russel & Ryland, 292,) a prisoner, to screen his accomplice, who was indicted for horse-stealing, broke into the prosecutor's stable, and took away the horse, which he backed into a coal pit, and killed; and it was objected at the trial, that this was not larceny, because the taking was not with an intention to convert the horse to the use of the taker, *animus furandi et lucri causa;* seven of the judges held that it was larceny, and six of that majority were of opinion, that to constitute larceny, it was not essential that the taking should be *lucri causa;* if it be fraudulent, and with intent wholly to deprive the owner of his property. But some of this majority thought that the object of the prisoner might be deemed a benefit, and the taking, *lucri causa.*

Also, in the case of the King vs. Morfet and others, where the prisoner's servants in husbandry, opened the granary of their master, by means of a false key, and took thereout two bushels of beans to give to their master's horses, in addition to the quantity usually allowed; this was held larceny, by a majority of the judges; but it was alleged by some of the judges, that the additional quantity of beans would diminish the work of the men who had to look after the horses, and therefore, the *lucri causa*, to give themselves ease, was an ingredient of the offence.

It appears to us, that these cases cannot be considered authority in this country. The shadowy, and almost imaginary distinctions upon which they rest, are at war with that precision and certainty which is the boast of the criminal law of England. It is also to be remarked, that they are decisions made by a bare majority of the judges; and of that majority, a considerable portion, for reasons, it is true, which do not seem entitled to much weight, held that the *lucri causa* was present in those cases.

In the case at bar, it is very clear, that the intention was apparent to do the owner of the slave an injury, by depriving him of his property; but we cannot see how the prisoner was himself to be benefitted, by aiding the slave to obtain her freedom. There being, therefore, no intention to convert the slave to his own use,—he cannot, from the view we take of the case, be found guilty of larceny.

We are greatly strengthened in the view we have taken of this case, from the legislation of the slaveholding

8 P.                    59

The State *vs.* Hawkins.

States on this subject.   In the States of Kentucky, South Carolina, North Carolina, and, as we are informed, in other slaveholding States, the crime of taking a slave, without the consent of the owner, with intention to convey him beyond the limits of the State, is specially provided for, in addition to penal enactments for stealing a slave.   We are, therefore, of opinion, that the indictment, in this case, for stealing a slave, cannot be supported, on the evidence contained in the bill of exceptions.

The judgment of the court below, is therefore reversed; but the prisoner is to remain in custody, until the next term of the Circuit court, to be held for the county of Mobile, unless delivered therefrom, by due course of law, to enable the solicitor for that judicial circuit, to prefer an indictment against him for harboring or concealing the slave Jane, in this indictment mentioned, or for a conspiracy to deprive the owner of the said slave of his property.